**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LIFORME LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.: 23-cv-14195 |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A TO THE | ) | |
| COMPLAINT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A
TEMPORARY TRANSFER OF CONTROL OVER THE DEFENDANT INTERNET
STORES, A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED
DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF
<u>PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................................1

II.     STATEMENT OF FACTS ...............................................................................4

    A.      Plaintiff's Intellectual Property and Products ...................................................4

    B.      Defendants' Unlawful Activities .....................................................................5

        1.      Defendants Operate Legitimate-Looking Internet Stores. ...................................5

        2.      Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines. ..........................................................................................6

        3.      Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down. ...................................................................................................6

        4.      Defendants Use Common Tactics to Evade Enforcement. ..................................6

III.    ARGUMENT ..............................................................................................9

    A.      This Court May Exercise Personal Jurisdiction Over Defendants................................9

    B.      Standard for Temporary Restraining Order and Preliminary Injunction ........................11

    C.      Plaintiff Will Likely Succeed on the Merits. ...................................................... 12

        1.      Plaintiff Will Likely Succeed on Their Patent Infringement Claim. ...................12

        2.      Plaintiff Will Likely Succeed on Their Copyright Infringement Claim. .............17

        3.      Overall, it is clear that Defendants have copied Plaintiff's copyright and patents without Plaintiff's consent. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim. .......................................................21

        4.      Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim. ..........................................................................19

    D.      There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief..........................................................19

    E.      The Balancing of Equities Tips in Plaintiff's Favor. ...........................................24

    F.      Issuance of the Injunction Is in the Public Interest. ............................................27

IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. ......................................29

i

A.    A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ...................................................29

B.    Transferring the Defendant Internet Stores to Plaintiff's Control Is Appropriate. ..........28

C.    Preventing the Fraudulent Transfer of Assets Is Appropriate. ........................................29

D.    Plaintiff Is Entitled to Expedited Discovery. .................................................................31

E.    Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case...................................................................................................................................32

V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ...................................................42

VI.    CONCLUSION...............................................................................................................................42

## TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Abbott Labs. v. Mead Johnson & Co.*,
   971 F.2d 6, 11 (7th Cir. 1992) ................................................... 12

*Aevoe Corp. v. AE Tech Co., Ltd.*,
   No. 2:12-cv-0053, 2012 WL 760692 (D. Nev. Mar. 7, 2012) ........................ 22

*American Greetings Corp. v. Kleinfab Corp.*,
   400 F. Supp. 228, 234 (S.D.N.Y. Sept. 15, 1975) ............................... 24

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
   256 F. App'x 707 (5th Cir. 2007) ............................................. 29

*Apple Inc. v. Samsung Elecs. Co.*,
   735 F.3d 1352 (Fed. Cir. 2013) .............................................. 21

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
   726 F.3d 1296 (Fed. Cir. 2013) .............................................. 20

*Bluestar Mgmt. LLC v. The Annex Club, LLC*,
   No. 09-4540, 2010 WL 2802213 (N.D. Ill July 12, 2010) ....................... 18

*Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A,"*,
   No. 14-cv-4819, 2014 WL 3749132 (N.D. Ill. July 18, 2014) .................. 23, 24

*Bushnell, Inc. v. Brunton Co.*,
   673 F.Supp.2d 1241 (Nov. 25, 2009) ......................................... 22

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012) .............................................. 23

*Cengage Learning, Inc v. Doe 1*,
   2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ............................... *passim*

*Chrome Hearts LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
   No. 1:15-CV-03491, 2015 WL 5307609 (N.D. Ill. Sept. 9, 2015) ................. 2

*Chrome Cherry Limited v. Partnerships, and Unincorporated Associations Identified on Schedule A.*,
  No. 21-CV-05491, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) .............................................. *passim*

*Columbia Pictures Indus., Inc. v. Jasso*,
  927 F. Supp. 1075 (N.D. Ill. Apr. 12, 1996) ......................................................................... 9

*Competitive Edge, Inc. v. Staples, Inc.*,
  763 F. Supp. 2d 997 (N.D. Ill. Mar. 29, 2010) .................................................................. 13

*Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies,*
  *Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*,
  No. 1:19-cv-05907 (N.D. Ill. Sept. 10, 2019) .................................................................. 27

*Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies,*
  *Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*,
  No. 1:18-cv-07531 (N.D. Ill. Nov. 20, 2018) .................................................................. 11

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002) .......................................................................................... 29

*Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations*,
  2013 WL 1337616 (N.D. Ill. Mar. 27, 2013) .................................................................. 27

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ...................................................................................... 25

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) ........................................................................................ 13

*Eli Lilly & Co. v. Natural Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) .......................................................................................... 12

*E-Link Technology Co., Ltd. v. Shenzen Uni-Sun Electronics Co., Ltd.*,
  No. 20 C 00247, 2020 WL 3643056 (N.D. Ill. July 6, 2020) ........................................... 23

*Ent. One UK Ltd. v. 2012Shiliang*,
  384 F. Supp. 3d 941 (N.D. Ill. May 2, 2019) .................................................................. 19

*Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
  2020 WL 8093511 (N.D. Ill. Oct. 28, 2020) .................................................................... 33

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) .................................. 15

*Ford Motor Co. v. Lapertosa*,
  126 F. Supp. 2d 463 (E.D. Mich. Jan. 3, 2000) ............................................... 28

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,*
  35 F.3d 1134 (7th Cir. 1994) ........................................................................ 23

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019) ........................................................................ 12

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308, 119 S. Ct. (1999) ................................................................... 29

*Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations
    Identified on Schedule A, Defendants.*,
  No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ............................ 35

*Hay v. Indiana State Bd. of Tax Comm'rs*,
  312 F.3d 876 (7th Cir. 2002) ........................................................................ 30

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
  560 F.2d 1325 (7th Cir. 1977) ...................................................................... 21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) ........................................................................ 36

*Horn Abbot Ltd. v. Sarsaparilla Ltd.*,
  601 F.Supp. 360 (N.D. Ill. Dec. 3, 1984) ............................................... 24, 25

*HyperQuest Inc. v. N'Site Solutions, Inc.*,
  632 F.3d 377 (7th Cir. 2011) ........................................................................ 15

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
  612 F.2d 1018 (7th Cir. 1979) ...................................................................... 21

*In re LDK Solar Secs. Litig.,*
  No. C 07-05182 WHA, 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ............ 35

*In the matter of Vuitton et Fils, S.A.*,
   606 F.2d 1 (2d Cir. 1979) ................................................................................................ 2

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
   765 F.Supp. 1310 (N.D. Ill. Jun. 25, 1990) ............................................................. 24, 25

*Jefferson v. Johnson Publishing, Inc.*,
   1992 WL 318615 (N.D. Ill. Oct. 28, 1992) .............................................................. 21, 25

*Juniper Networks, Inc. v. Bahattab*,
   No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) ......................... 34

*Kipling Apparel Corp. v. Rhys*,
   2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016) ...................................................... 27, 34, 37

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
   51 F.3d 982 (11th Cir. 1995) ........................................................................................ 29

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
   2019 WL 7599931 (S.D.N.Y. May 29, 2019) ................................................................. 27

*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*,
   814 F.3d 1343 (Fed. Cir. 2016) .................................................................................... 20

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
   No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ..................................... 34

*Microsoft Corp. v. 9038-3746 Quebec, Inc.*,
   No. 06CV0892, 2007 WL 3232465 (N.D. Ohio Nov. 1, 2007) ........................................ 29

*Monster Energy Company v. Wensheng*,
   136 F.Supp.3d 897 (N.D. Ill. Sep. 29, 2015) ................................................................ 10

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
   No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ..................................... 36

*NBA Properties, Inc. v. Partnerships and Unincorporated Associations Identified in Schedule "A"*,
   No. 20-cv-07543, 549 F.Supp.3d 790 (N.D. Ill. Jul. 15, 2021) ...................................... 34

*NBA Properties, Incorporated, et al. v. Hanwjh,*
No. 21-2909, 2022 WL 3367823 (7th Cir. 2022) ............................................................................. 11

*New York City Triathalon, LLC v. NYC Triathalon Club, Inc.,*
704 F. Supp. 2d 305 (S.D.N.Y. Mar. 9, 2010) ................................................................................ 25

*Next Phase Distrib., Inc. v. John Does 1-27,*
284 F.R.D. 165 (S.D.N.Y. Jul. 31, 2012) ....................................................................................... 30

*Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.,*
166 F.Supp.3d 1177 (D. Nev. Feb. 17, 2016) ........................................................................... 20, 27

*NYP Holdings v. New York Publishing Inc,*
63 F. Supp. 3d 328 (S.D.N.Y. Nov. 17, 2014) ................................................................................ 25

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
No. 2:04-cv-0032, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007) ..................................................... 22

*Oakley, Inc. v. Partnerships and Unincorporated Associations Identified on Schedule "A",*
No. 20-cv-06676, 2020 WL 9455191 (N.D. Ill. Dec. 11, 2020) ...................................................... 10

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340, 98 S. Ct. 2380 (1978) ............................................................................................... 30

*Otter Prods. v. Anke Group Indus. Ltd.,*
2:13-cv-00029, 2013 WL 5910882 (D. Nev. Jan. 8, 2013) ........................................................ 20, 22

*PCT Int'l Inc. v. Holland Elecs. LLC,*
No. CV-12-01797-PHX-JAT, 2015 WL 5210628 (D. Ariz. Sept. 8, 2015) ..................................... 21

*PCT Int'l Inc. v. Holland Elecs. LLC,*
No. 2016-1061, WL 4373941 (Fed. Cir. 2016) ................................................................................ 22

*Peters v. West,*
692 F.3d 629 (7th Cir. 2012) ........................................................................................................... 15

*Philip Morris U.S.A., Inc. v. Otamedia Ltd.,*
331 F. Supp. 2d 228 (S.D.N.Y. Aug. 20, 2004) .............................................................................. 28

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
   225 F.R.D. 560 (E.D. Tenn. Nov. 16, 2004) ............................................................ 34, 36

*Promatek Industries, Ltd. v. Equitrac Corp.*,
   300 F.3d 808 (7th Cir. 2002) ........................................................................................ 22

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ........................................................................................ 10

*Rathmann Grp. v. Tanenbaum*,
   889 F.2d 787 (8th Cir. 1989) ........................................................................................ 36

*Re/Max N. Cent., Inc. v. Cook*,
   272 F.3d 424 (7th Cir. 2001) ........................................................................................ 20

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
   32 F.3d 1552 (Fed. Cir. 1994) ...................................................................................... 21

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
   970 F.2d 552 (9th Cir. 1992) ........................................................................................ 29

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...................................................................................... 32

*Robert Bosch LLC v. Pylon Manufacturing Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) .............................................................................. 19, 22

*Rodriguez v. Plymouth Ambulance Serv.*,
   577 F.3d 816 (7th Cir. 2009) ........................................................................................ 30

*Bd. of Directors of Sapphire Bay Condominiums W. v. Simpson*,
   129 F. App'x 711 (3d Cir. 2005), ................................................................................. 28

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
   No. 7:05-cv-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005) ................................ 25

*Spex, Inc. v. Joy of Spex, Inc.*,
   847 F. Supp. 567 (N.D. Ill. Feb. 17, 1994) .................................................................. 19

Spinmaster, Ltd. v. Overbreak LLC,
    404 F.Supp.2d 1097 (N.D. Ill. Dec. 16, 2005).............................................................. 20, 21

Square One Entertainment Inc. v. The Partnerships and Unincorporated Associations Identified in
    Schedule "A", Defendants.,
    No. 20 C 5685, 2021 WL 1253450 (N.D. Ill. Apr. 5, 2021) ......................................... 9, 10

Strabala v. Zhang,
    318 F.R.D. 81 (N.D. Ill. Nov. 18, 2016) .......................................................................... 34

Ty, Inc. v. GMA Accessories, Inc.,
    132 F.3d 1167, 1173 (7th Cir. 1997) ............................................................................... 20

Ty, Inc. v. The Jones Group, Inc.,
    237 F.3d 891, 895 (7th Cir. 2001) ................................................................................... 12

uBID, Inc. v. GoDaddy Group, Inc.
    623 F.3d 421, 423 (7th Cir. 2010) ................................................................................... 10

USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.,
    402 F. Supp. 3d 427 (N.D. Ill. Aug. 14, 2019) .......................................................... 11, 20

Vance v. Rumsfeld,
    No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ................................... 30

Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi,
    No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. Apr. 5, 2021) ............................... 9, 27, 37

Windsurfing Int'l, Inc. v. AMF, Inc.,
    782 F.2d 995 (Fed. Cir. 1986) ......................................................................................... 23

Winter v. Natural Res. Def. Council, Inc.,
    555 U.S. 7, 129 S. Ct. 365 (2008)..................................................................................... 20

WPIX, Inc. v. ivi, Inc.,
    765 F. Supp. 2d 594 (S.D.N.Y. Feb. 22, 2011) ............................................................... 24

ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies,
    Partnerships and Unincorporated Associations Identified on Schedule A Hereto,
    No.: 1:21-cv-02180 (N.D. Ill. April 27, 2021) ................................................... 2, 10, 27, 28

*Zuru (Singapore) Pte., Ltd.. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:21-cv-02151 (N.D. Ill. May 5, 2021) ........................................................................ 2, 37

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ........................................................................ 18

17 U.S.C. § 101 ........................................................................ 9

17 U.S.C. § 501(b) ........................................................................ 15

17 U.S.C. § 502 ........................................................................ 3, 21, 26

17 U.S.C. § 503 ........................................................................ 3, 21, 26

17 U.S.C. § 504 ........................................................................ 3, 29

28 U.S.C. § 1331 ........................................................................ 9

28 U.S.C. § 1338(a)–(b) ........................................................................ 9

28 U.S.C. § 1367(a) ........................................................................ 9

28 U.S.C. § 1391 ........................................................................ 9

28 U.S.C. § 1400 ........................................................................ 9

35 U.S.C. § 271(a) ........................................................................ 12

35 U.S.C. § 283 ........................................................................ 3, 26

35 U.S.C. § 289 ........................................................................ 29

735 ILCS 5/2-209(a)(2) ........................................................................ 10

**Rules**

Fed. R. Civ. P. 4 ........................................................................ *passim*

Fed. R. Civ. P. 26 ........................................................................ 30

**Treatises**

*McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013)......................................... 29

## I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

This application (the "Application") is filed by Plaintiff LIFORME LTD. ("LIFORME" or "Plaintiff") and arises from defendants'[1] improper marketing and sale of counterfeit products online. As described below, Defendants are improperly promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of Plaintiff's LIFORME products (the "LIFORME Products"), which are the subject of Plaintiff's copyright, specifically U.S. Copyright Office Registration No. VA2-311-816 (being registration for The Liforme Yoga Mat 1 and its derivations), (the "LIFORME Copyright" or "LIFORME Copyright Registration"). *See* Declaration of James Armitage filed concurrently herewith ("Armitage Decl."), Exhibit 1. Defendants are also improperly making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiffs' patented designs for exercise mats, U.S. Patent Nos. US D785,105 and US D805,811 (the "LIFORME Patents" or "LIFORME Patent Registrations"). *See* Armitage Decl. Exhibit 2. Defendants' illicit conduct is being carried out through various online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

Defendants, for their part, attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's registered copyright, as well as to protect unknowing consumers from purchasing counterfeit LIFORME Products over the

---

[1] "Defendants" are described in Schedule A attached to the Complaint.

Internet. In that regard, Plaintiff seeks to enjoin Defendants' ongoing unlawful activities, and

Plaintiff respectfully requests that this Court issue *ex parte* relief, including:

> (1) a temporary restraining order (the "TRO") against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products (the "Counterfeit Products") bearing, using, or infringing Plaintiff's LIFORME Copyright, and/or from the manufacture, importation, distribution, offering for sale, and sale of infringing products bearing, using, or otherwise infringing upon Plaintiff's LIFORME Patents;

> (2) a temporary transfer of control over the Defendant Internet Stores, as also identified on Schedule A to the Complaint, to Plaintiff;

> (3) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

> (4) expedited discovery allowing Plaintiff to inspect and copy defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Products, as well as Defendants' financial accounts;

> (5) permission to effectuate service by electronic mail and electronic publication; and

> (6) ordering Defendants to show cause why a preliminary injunction should not issue on the return date.

In light of the covert nature of offshore counterfeiting activities being undertaken by

Defendants and the vital need to establish an economic disincentive for counterfeiting, courts

regularly issue orders awarding such relief.[2]

---

[2] *See, e.g.*, *Zuru (Singapore) Pte., Ltd.. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:21-cv-02151, Document # 14 (N.D. Ill. May 5, 2021) (granting orders requested herein in similar case); *Zuru (Singapore) Pte., Ltd. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:21-cv-02180, Document # 14 (N.D. Ill. April 27, 2021) (Pacold, J.) (same); *see also Chrome Hearts LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 1:15-CV-03491, 2015 WL 5307609 (N.D. Ill. Sept. 9, 2015) (denying defendant's motion to intervene in same case as above); *In the matter of Vuitton et Fils*, *S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *Chrome Cherry Limited v. Partnerships, and Unincorporated Associations Identified on Schedule A.,*, No. 21-CV-05491, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) (granting

Plaintiff's well-pled allegations, which are supported by the declarations submitted in connection with the Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff is the owner of the valid LIFORME Patents and LIFORME Copyright and is the distributor of LIFORME Products. Defendants are, without authorization, using Plaintiff's copyright and/or patented designs to sell Counterfeit Products, resulting in substantial harm to Plaintiff, including loss of good will and creating consumer confusion.

Indeed, Defendants have and continue to irreparably harm Plaintiff as Defendants' misconduct diminishes Plaintiff's goodwill in its products and damages Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. Defendants, by contrast, face no harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate in this matter.

Furthermore, issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products. The public has a right to know what it is purchasing.

In addition, an order authorizing the transfer of the Defendant Internet Stores to Plaintiff's control is warranted pursuant to 35 U.S.C. § 283 (providing for injunctive relief "to prevent the violation of any right secured by patent") and pursuant to 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and

---

ex-parte temporary restraining order and electronic service of process against defendants in design patent infringement case).

destroyed). Such relief will prevent the continued use of online marketplaces in question in carrying out acts of infringement. Moreover, under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as online marketplace platforms and financial institutions, that are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504 and 35 U.S.C. § 283 and the Court's inherent authority.

Finally, an order authorizing service of process by e-mail and electronic publication is proper as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is absolutely necessary to protect Plaintiff's legitimate interests in the LIFORME Copyright, LIFORME Patents, and LIFORME Products. Accordingly, Plaintiff's respectfully request entry of their proposed order in its entirety.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Intellectual Property and Products

Plaintiff is the registered owner of the LIFORME Copyright in respect of The Liforme Yoga Mat 1, and its derived mats incorporating portions thereof, and the registered owner of the LIFORME Patents for exercise mats.

Since at least 2013, the LIFORME Products are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Armitage Decl., ¶¶ 11-12. Plaintiff has and continues to widely market and promote the LIFORME Products in the industry and to consumers.

*Id.* Plaintiff's promotional efforts include—by way of example but not limitation—substantial print media, the LIFORME website and social media sites, and point of sale materials. *Id.* ¶ 11.

Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the LIFORME Products. Armitage Decl. ¶ 12. As a result, the LIFORME Products' designs are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

The success of the LIFORME Products and brand has resulted in its significant counterfeiting. *Id.* ¶ 13.

**B.    Defendants' Unlawful Activities**

Plaintiff has identified numerous Defendant Internet Stores that sell Counterfeit Products from foreign countries to consumers in this Judicial District. *Id.* ¶ 18.

Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and cost legitimate businesses billions in lost revenue annually. Declaration of Brittany Zoll filed concurrently herewith ("Zoll Decl."), ¶ 3 and Ex. 1 thereto. According to intellectual-property-rights seizures-statistics reports issued by Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. *Id.* ¶ 4 and Ex. 2. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* ¶ 5 and Ex. 3.

1.    Defendants Operate Legitimate-Looking Internet Stores.

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine LIFORME Products. Armitage Decl., ¶¶ 25-26. Many of the Defendant Internet

Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon, and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Plaintiff has not licensed or authorized Defendants to use the LIFORME Patents and/or LIFORME Copyright and none of the Defendants are authorized retailers of genuine LIFORME Products. *Id.* ¶ 26.

2.      Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines.

Defendants typically use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine LIFORME Products. *Id.* ¶ 28. Further, Defendants typically utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* Lastly, Defendants also deceive unknowing consumers by infringing the LIFORME Patents and/or LIFORME Copyright without authorization within the product descriptions of their Defendant Internet Stores to attract customers. *Id.*

3.      Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down.

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* ¶ 29. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities

or states. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id*. ¶¶ 30-31. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective stores. *Id.* In addition, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, user-defined variables, domain redirection, lack of contact information, identically or similarly priced hosting services, similar name servers, and the use of the same text and images. *Id.*

4.  Defendants Use Common Tactics to Evade Enforcement.

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. Armitage Decl., ¶ 32. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers

located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Armitage Decl., ¶ 33. Further, Defendants typically maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiff's well-pled allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit LIFORME Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with infringing and counterfeit versions of the LIFORME Patents and/or LIFORME Copyright in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III. **ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's by infringing the LIFORME Patents and counterfeiting the LIFORME Copyright. *See* Armitage Decl., ¶¶ 35-38. To stop Defendants' sale of Counterfeit Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Internet Stores to Plaintiff to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets. Without the relief requested by Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Fed. R. Civ. P. 65(b) provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Defendants fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the LIFORME Products via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit LIFORME Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use and/or infringement of the LIFORME Patents and/or LIFORME Copyright and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will modify change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters

present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Chrome Cherry Limited v. Partnerships, and Unincorporated Associations Identified on Schedule A.*, No. 21-CV-05491, 2021 WL 6752296, at \*2 (N.D. Ill. Oct. 20, 2021) (in design patent infringement cases, "should Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court"; *Square One Entertainment Inc. v. The Partnerships and Unincorporated Associations Identified in Schedule "A", Defendants.*, No. 20 C 5685, 2021 WL 1253450, at \*1 (N.D. Ill. Apr. 5, 2021) (Durkin, J.) ("[D]istrict courts often agree, that it is necessary to restrain the defendants' assets without notice in order to prevent them from removing their assets from the United States or otherwise hiding them."); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); *see also Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631, at \*2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the copyright claim and the patent claim pursuant to 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arises under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and

derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

A.     **This Court May Exercise Personal Jurisdiction Over Defendants**

This Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this Judicial District as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing infringing and counterfeit versions of the LIFORME copyrights and/or LIFORME Patents. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Infringing and Counterfeit Products to consumers within the United States, including the State of Illinois. *See* Complaint ¶ 14. Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in their favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a Plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

The Northern District of Illinois regularly exercises personal jurisdiction over websites using registered copyrights and/or patents without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the

Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Oakley, Inc. v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-06676, 2020 WL 9455191 (N.D. Ill. 2020) (finding "personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold products that infringe directly and/or indirectly [Plaintiff's] United States design patents."); *see also Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 902-909 (N.D. Ill. 2015); *Square One Entertainment*, 2021 WL 1253450, at *1; *ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV-02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving BUNCH O BALLOONS copyrighted works and trademark); *Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:18-cv-07531, Document #: 16 (N.D. Ill. Nov. 20, 2018) (Durkin, J.) (same). Through at least the fully interactive commercial Internet website operating under the Defendant Internet Stores and the marketplace listings operated using the online marketplace accounts, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Infringing and Counterfeit LIFORME Products to residents of the United States, including Illinois. *See NBA Properties, Incorporated, et al. v. Hanwjh, N*o. 21-2909, 2022 WL 3367823, at *7 (7th Cir. 2022) (finding personal jurisdiction over a China-based defendant that had

12

established an online store using third-party retailer Amazon.com, for single sale of counterfeit product in Illinois, since "[t]he question is not whether the plaintiff purchased enough goods to subject the defendant to personal jurisdiction. The focus is whether [the defendant] purposefully directed its conduct at Illinois"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. Specifically, as detailed in the Complaint and in the Armitage Decl., Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this District. *See* Armitage Decl., ¶¶ 18-21. In fact, Exhibit 3 to the Armitage Decl. contains copies of the checkout pages for each Defendant Internet Store, reflecting the ability to order Counterfeit Products to cities in this District, including without limitation Chicago and River Forest. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants

### B.     Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g.*, *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public

interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the court has deemed "the sliding scale approach"—the more likely the Plaintiff will succeed on the merits, the less the balance of harms need favor the Plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

## C. **Plaintiff Will Likely Succeed on the Merits.**

### 1. Plaintiff Will Likely Succeed on Their Patent Infringement Claim.

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, LIFORME is the lawful assignee of all right, title and interest in and to the LIFORME Patents. Armitage Decl.,¶ 6. Plaintiff has submitted extensive documentation that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the designs claimed in the LIFORME Patents. *Id.* ¶ 21.

The inquiry that governs analysis of design patent infringement is "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was

the same as the patented design." *See Competitive Edge, Inc. v. Staples, Inc*., 763 F. Supp. 2d 997, at *1011 (N.D. Ill. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 672 (Fed. Cir. 2008)). The submitted documentation shows that an ordinary observer would be deceived into thinking that the Counterfeit Products are the same as Plaintiff's LIFORME Products utilizing the LIFORME Patents. Finally, Plaintiff has not licensed or authorized Defendants to use the LIFORME Patents, and none of the Defendants is an authorized retailer of the genuine LIFORME Products. Armitage Decl. ¶ 27. Accordingly, Plaintiff is likely to establish a prima facie case of design patent infringement.

As just one example, Defendants deceive unknowing consumers by using the LIFORME Patents without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

*Figures from Plaintiff's LIFORME Patents*





*Exemplary Counterfeit Produtcs sold on Defendants Online Stores*





Overall, it is clear that Defendants have copied Plaintiff's LIFORME Patents without Plaintiff's consent.

2. <u>Plaintiff Will Likely Succeed on Their Copyright Infringement Claim.</u>

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991); *see also Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012).

Here, Plaintiff is likely to succeed on the merits of their copyright infringement claim. First, Plaintiff owns all exclusive rights in the LIFORME Copyright and LIFORME Products. Armitage Decl., ¶ 5; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement); *HyperQuest Inc. v. N'Site*

*Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) (noting § 501(b) provides that holder of an exclusive license to distribute a particular work can sue under the Copyright Act).

Second, Plaintiff has shown that Defendants have made unauthorized copies of LIFORME Products. Specifically, Defendants also deceive unknowing consumers by using the LIFORME Copyright without authorization within the product descriptions of their Defendant Internet Stores to attract customers. Armitage Decl., ¶¶ 27-28.

In fact, as a visual representation, Defendants have directly copied Plaintiff's copyright for the LIFORME Products, or, alternatively, Defendants' representations of Plaintiff's copyright for the LIFORME Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyright for the LIFORME Products and constitutes unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyright for the LIFORME Products. As just one example, Defendants deceive unknowing consumers by using the LIFORME Copyright without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

*Figure from Plaintiff's LIFORME Copyright Registration*



The Liforme Yoga Mat 1

*Figures from derivations of the LIFORME Copyright Registration*



The Liforme Yoga Mat 2



The Liforme Evolve Yoga Mat



The Liforme Yoga Pad

*Counterfeit LIFORME Produtcs sold on exemplary Defendants Online Stores*





3.  Overall, it is clear that Defendants have copied Plaintiff's copyright and design patents without Plaintiffs' consent. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A) must show: "(1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." *Bluestar Mgmt. LLC v. The Annex Club, LLC,* No. 09-4540, 2010 WL 2802213, at *4 (N.D. Ill July 12, 2010) (internal quotations and citations omitted). Because Plaintiff has established a likelihood of success on the merits of its copyright infringement and patent infringement claims, a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

4.  Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim.

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *See Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 952 (N.D. Ill. 2019). Because Plaintiff has established a likelihood of success on the merits of its copyright infringement, patent infringement, and false designation of origin claims against Defendants, as shown above, and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

**D.  There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Defendants' unauthorized use of the LIFORME Patents and LIFORME Copyright has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* Armitage Decl., ¶¶ 34-39.

Irreparable harm resulting from design patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Armitage Decl., ¶¶ 35-38. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted). Defendants' infringement erodes and devalues Plaintiff's rights in the LIFORME Patents, thereby risking injury to Plaintiff's goodwill and reputation and interfering with Plaintiff's ability to exploit the LIFORME Patents and LIFORME Copyright. *See* Armitage Decl., ¶ 38; *see also, Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury . . .in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, [defendant's] importation, sale, and/or offers to sell its [infringing products] will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property

rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

While loss of goodwill is "more commonly associated with trademark cases, [ ] it is applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1173 (7th Cir. 1997). Thus, damage to a copyright holder's goodwill "is unquantifiable and therefore irreparable." *Spinmaster, Ltd. v. Overbreak LLC*, 404 F.Supp.2d 1097, 1111 (N.D. Ill. 2005); *see also USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 437 (N.D. Ill. 2019) (quoting *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("The Seventh Circuit has 'repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.'"); 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). A plaintiff with a copyright infringement claim "has the right to protect their reputation as well as their sales from infringers." *Spinmaster*, 404 F.Supp.2d at 1111.

Defendants' infringement of the LIFORME Patents and LIFORME Copyright by sale of the Counterfeit Products is likely to cause consumer confusion with the genuine LIFORME Products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. *See* Armitage Decl., ¶ 37. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994).

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v.*

*Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The Seventh Circuit and other courts have held that 'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods." *Jefferson v. Johnson Publishing, Inc.*, 1992 WL 318615, at *2 (N.D. Ill. Oct. 28, 1992) (citing cases). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the LIFORME Patents and LIFORME Copyright in the Counterfeit Products is a substantial, if not the exclusive, reason for consumer demand of the Counterfeit Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect

monetary damages'"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *See e.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to Plaintiff's goodwill was irreparable harm for which Plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order and preliminary injunction are not issued in accordance with Fed. R. Civ. P. 65(b)(1). *See* Armitage Decl., ¶¶ 35-38. As such, Plaintiff should be granted preliminary relief.

E.    **The Balancing of Equities Tips in Plaintiff's Favor.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

"As willful infringers, Defendants are entitled to little equitable consideration." *Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A"*, No. 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014). This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Defendants took a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *E-Link Technology Co., Ltd. v. Shenzen Uni-Sun Electronics Co., Ltd.*, No. 20 C 00247, 2020 WL 3643056, at *2 (N.D. Ill. July 6, 2020) (denying defendants' motion to vacate the preliminary injunction order in design patent case, and c*iting Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *see also Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

Where the evidence shows that a defendant "has knowingly engaged in infringing activities as a regular feature of its business," the effect of an injunction on a defendant's business is given little equitable consideration. *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1332 (N.D.

Ill. 1990); *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F.Supp. 360 (N.D. Ill. 1984) (to consider a "blatant" copyright infringer's argument "that an injunction will put them out of business, is to pervert the meaning of the balance of hardships test"). If a "defendant appears to be a brazen infringer," a defendant should receive little equitable consideration from the Court. *American Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 228, 234 (S.D.N.Y. 1975); *see also Bulgari, S.p.A.*, 2014 WL 3749132, at *6 ("As willful infringers, Defendants are entitled to little equitable consideration"). In that regard, where the evidence shows that a defendant has knowingly engaged in infringing activities, it follows that [the defendant] is not legally harmed by the fact that it cannot continue" such misconduct, "even if this ultimately puts [the defendant] out of business." *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011), *aff'd*, 691 F.3d at 287. Indeed, "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product. *WPIX, Inc.*, 691 F.3d at 287 (citation omitted).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit LIFORME Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**F.    Issuance of the Injunction Is in the Public Interest.**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal patent and copyright laws.

The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity.*" ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332 (N.D. Ill. 1990). Likewise, "the public plainly has an interest

in preventing people from copying for commercial use the entire contents of a copyrighted work." *Horn Abbot*, 601 F. Supp. at 369. Similarly, "[t]he public interest would certainly be disserved if defendants were permitted to continue to knowingly infringe Plaintiff's [copy]rights." *Jefferson v. Johnson Pub., Inc*., 1992 WL 318615, at \*3 (N.D. Ill. Oct. 28, 1992). Additionally, the public interest is not served by "cheap copies of patented inventions [that] have the effect of inhibiting innovation and incentive." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013). Further, an injunction serves the public interest in this case "because the infringing goods are causing consumer confusion, and there is no countervailing harm to Defendants from an Order directing them to stop the unlawful sale or products infringing on Plaintiff's patent design." *Chrome Cherry*, 2021 WL 6752296, at \*2.

Federal courts have long held that in addition to protecting the property right of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *New York City Triathlon, LLC v. NYC Triathalon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *NYP Holdings*, 63 F. Supp. 3d at 342 (consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide*, *Inc.,* No. 7:05-cv-00016, 2005 WL 552593, at \*4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source

of the goods and services offered by Defendants, or as to the identity of the owner of copyrights used in connection with those goods and services. Unless Defendants' unauthorized use of the LIFORME Copyright and LIFORME Patents is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, equity requires that Defendants be ordered to cease their unlawful conduct and it is respectfully submitted that granting Application is in the public interest.

## IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

In addition to this Court's inherent authority to issue injunctive relief, the Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283, Further, the Copyright Act specifically authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright" and provides that any of Defendants' infringing products be impounded and destroyed. 17 U.S.C. §§502, 503.

Fed. R. Civ. P. 65(b) also provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A.     A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all making, using, offering for sale, selling, and importing any products not authorized by LIFORME

and including any reproduction, copy, or colorable imitation of either of the LIFORME Patents or LIFORME Copyright on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the LIFORME Patents and LIFORME Copyright and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the LIFORME Patents and LIFORME Copyright.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit LIFORME Products.

Many courts, including in this district, have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property rights and counterfeiting. *See, e.g.*, *Chrome Cherry*, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) (granting ex-parte temporary restraining order and electronic service of process against Chinese defendants in design patent infringement case); *ZURU*, No.: 1-21-cv-02180, Document # 14 (granting orders requested herein in a similar case involving Plaintiffs' BUNCH O BALLOONS Copyright Works and Trademark); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:19-cv-05907, Document # 17 (N.D. Ill. Sept. 10, 2019) (same); *see also Nike, Inc.*, 166 F. Supp. 3d at 1178-79; *Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931 *Cengage Learning,* 2018 WL 2244461; *Kipling Apparel Corp.*, 2016 WL 8814345.

B.     **Transferring the Defendant Internet Stores to Plaintiff's Control Is Appropriate.**

As a part of the Temporary Restraining Order, Plaintiff also seeks temporary transfer of the Defendant Internet Stores to Plaintiff's control in order to disable the counterfeit websites and

electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in intellectual property infringement cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations*, 2013 WL 1337616, at *9 (N.D. Ill. Mar. 27, 2013) ("This Court agrees with the several other courts in this district . . . . Absent a transfer of domain names to the Plaintiff, the Defendants in this case may be able to evade the Court's restraining order by changing ownership of the domain name and continuing to operate their online marketplaces while this case is pending."); *ZURU,* No.: 1-21-cv-02180, Document # 14; *see also, e.g., Philip Morris U.S.A., Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's domain names to Plaintiff); *Bd. of Directors of Sapphire Bay Condominiums W. v. Simpson*, 129 F. App'x 711, 712 (3d Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 466 (E.D. Mich. 2000) (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name . . . significantly tarnishes [Plaintiff's] reputation").

As such, Plaintiff respectfully requests that, as part of the Temporary Restraining Order, the Court require the online marketplace platforms, such as Amazon or eBay, or website registrars to transfer the Defendant Internet Stores to Plaintiff.

## C.     Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit LIFORME Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, it appears that the Defendants in this case hold most of their assets in foreign countries, outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to LIFORME. This scheme by Plaintiffs makes it easy to hide or dispose of their assets and renders an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Chrome Cherry*, 2021 WL 6752296, at *2 (asset restraint warranted in design patent infringement case); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013); *see also Cengage Learning,* 2018 WL 2244461 (recognizing the Court's authority to freeze a defendant's assets when plaintiff is seeking equitable relief) (citing *Grupo Mexicano*, 527 U.S. at 324–26). Because the plaintiffs sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets. *Id.*); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256

F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim and the merits of its copyright infringement claim, so under both 35 U.S.C. § 289 and the Copyright Act, Plaintiff is "entitled to recover the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Microsoft Corp. v. 9038-3746 Quebec, Inc.,* No. 06CV0892, 2007 WL 3232465, at *1 (N.D. Ohio, Nov. 1, 2007) (granting temporary restraining order freezing certain business assets "pursuant to Fed. R. Civ. P. 65, the Court's general equitable power, and the Court's statutory authority to order disgorgement of profits pursuant to . . . 17 U.S.C. § 504(b)"). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper in this case.

### D. **Plaintiff Is Entitled to Expedited Discovery.**

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 882 (7th Cir. 2002). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). "Rule 26(d) […] allows for discovery before the parties have conferred, as required by Rule 26(f), when authorized by a court order." *Ibarra v. City of Chicago,* 816 F.Supp.2d 541, 554 (N.D.Ill. Sept. 28, 2011) (citing Fed. R. Civ. P. 26(d)(1)). Courts in this District evaluate a motion for expedited discovery "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *TCYK, LLC v. Does 1-87,* No. 13 C 3845, 2015 WL 3465186, at *2 (N.D. Ill. Jul. 10, 2013) (finding reasonable to allow the Plaintiff the opportunity to discover the Doe defendants' true identities in a copyright infringement action prior to any Rule 26(f) conference). Courts in this circuit have also generally issued such order on a showing of good cause, which exists when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party". *Dallas Buyers Club, LLC v. Does 1-28*, No. 14 C 4927, 2014 WL 3642163 at *2 (N.D. Ill. Jul. 22, 2014) (finding such a good cause when a plaintiff cannot identify a Doe without issuing a subpoena to Doe's ISP).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay, Amazon, and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order. *See Chrome Cherry*, 2021 WL 6752296, at *2 ("expedited discovery is warranted to identify Defendants and to implement the asset freeze."). Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). As Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**E.**      **Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.**

Pursuant to Fed. R. Civ. P. 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on website to which the Defendant Internet Stores that are transferred to Plaintiff's control will redirect, and/or by sending an e-mail to any e-mail addresses provided for

Defendants by third parties that includes a link to said website (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants: (1) have provided false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Names may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

According to Section 4.1 of the Registrar Accreditation Agreement established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to "provide to ICANN and publish on its website its accurate contact details including a valid email and mailing address." *See* Zoll Decl., ¶ 6 & Ex. 4. Contrary to applicable ICANN regulations, it is common practice for counterfeiters to register their domain names with incomplete information, randomly typed letters, or omitted cities or states, in order to avoid full liability. And indeed, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, fail to include cities

or states, or use privacy services that conceal this information. Armitage Decl., ¶ 29. Similarities between the Defendant Internet Stores also suggest that many of the aliases used to register the Defendant Internet Stores are used by the same individual or entity. *Id.* ¶ 30.

Despite providing false physical addresses, the registrants of the Defendant Internet Stores must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal, for example, or must provide a valid e-mail address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of the Defendant Internet Stores, who operate entirely online, to visit their Internet Store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Fed. R. Civ. P. 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("*Rio*"). The Ninth Circuit in *Rio* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiff's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to the online marketplace platforms and other third-party payment processers in order to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail

addresses from online marketplace platforms Wish is often times the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of counterfeit products. *See* Armitage Decl., ¶ 24. Indeed, Defendants appear to rely primarily on electronic communications to communicate with their customers, demonstrating the reliability of this method of communication by which the Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have provided false names and physical address information in their registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct. *See* Armitage Decl., ¶ 29.

Notably, a number of courts, including in this District, have held that alternative forms of service pursuant to Fed. R. Civ. P. 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio,* 284 F.3d at 1018; s*ee e.g.*, *Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2020 WL 8093511, at *1 (N.D. Ill. Oct. 28, 2020) ("'Service of process by e-mail has been upheld in circumstances similar to those here.'") (quoting *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016)); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Chrome Cherry*, 2021 WL 6752296, at *2 (granting electronic service of process against foreign defendants, including those located in China, holding

"[e]lectronic service of process does not violate any treaty and is consistent with due process, because it effectively communicates the pendency of this action to Defendants."); *NBA Properties, Inc. v. Partnerships and Unincorporated Associations Identified in Schedule "A",* No. 20-cv-07543, 549 F.Supp.3d 790, a797 (N.D. Ill. 2021) permitting service by email in matter concerning online counterfeiters and noting that "speedy method of service . . .was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable."); *Cengage Learning,* 2018 WL 2244461, at *5 (finding email service appropriate under Fed. R. Civ. P. 4(f)(3)); *Kipling Apparel Corp.,* 2016 WL 8814345, at *3 (ordering email service pursuant to Fed. R. Civ. P. 4); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service; s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, at *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-18; other citations omitted) (holding that "in certain circumstances . . . service of process via electronic mail . . . is appropriate and may be authorized by the Court under Fed. R. Civ. P. 4(f)(3)").

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Internet Stores to conduct their Internet-based activities anonymously.

Furthermore, Fed. R. Civ. P. 4 does not require that a party attempt service of process by other methods enumerated in Fed. R. Civ. P. 4(f) before petitioning the court for alternative relief under Fed. R. Civ. P. 4(f)(3). *Rio*, 284 F.3d at 1014-15. As the *Rio* court explained, Fed. R. Civ. P. 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not

be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Fed. R. Civ. P. 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and/or e-mail.

In this case, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants. Plaintiff, however, has good cause to suspect the Defendants are mainly residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). *See* Zoll Decl., ¶ 7. The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. *Id.*; *see also Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email."). Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." Zoll Decl., ¶ 7 and Ex. 5; *Cengage Learning*, 2018 WL 2244461, at *5 (same).

As such, federal courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See Hangzhou Chic*, 2021 WL 1222783, at *4 ("[T]he Court finds that China has not 'objected' to email service, and the Court's order of email service pursuant to Fed. R. Civ. P. 4(f)(3) was appropriate."); *see also In re LDK Solar Secs. Litig.,* No. C 07-05182 WHA, 2008 WL 2415186, at *2 (N.D. Cal. Jun. 12, 2008)

(authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, at *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters.*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. *See* Zoll Decl., ¶ 8 and Ex. 6. The proposed Temporary Restraining Order provides for issuance of a single original summons [3] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Fed. R. Civ. P. 4(b). As such, Plaintiff respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

In summary, Plaintiff respectfully submits that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. Plaintiff, therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

---

[3] The Advisory Committee Notes to the 1993 Amendment to Fed. R. Civ. P. 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances, and consistent with the bond amounts required by courts in similar case. *See, e.g., Zuru*, No. 1:21-cv-02151, Document # 14 ($5,000.00 bond); *Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *6 ($1,000 bond).

## VI.    CONCLUSION

Plaintiff's business, its LIFORME brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's copyright and patent rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a return before the expiration of the Temporary Restraining Order at which hearing Plaintiff can be heard on their request for entry of preliminary injunctive relief.

Dated:  September 27, 2023               Respectfully submitted,

By: /s/ *Brittany Zoll*

Brittany Zoll (NDIL #5478672)
Rossana Baeza (NDIL #1007668)
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
bzoll@bsfllp.com
rbaeza@bsfllp.com

*Attorneys for Plaintiff LIFORME LTD.*